UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JO-ANN MARCHELL BROOKS,

            Plaintiff,

v.                                          Case No.: **3:09-cv-379-J-25TEM**

CSX TRANSPORTATION, INC.,

            Defendant.

_____/

## O R D E R

**THIS CAUSE** is before the Court on Defendant CSX Transportation

Inc.'s (CSXT) Motion for Summary Judgment (Dkt. 66) and Plaintiff Jo-Ann

Marchelle Brooks' consolidated Response thereto (Dkt. 78). The Court has

reviewed the filings and finds as follows:

## I.   INTRODUCTION

This case was originally before the Honorable Timothy J. Corrigan

and was reassigned to the undersigned on June 22, 2011 (Dkt. 37). While

presiding over this case, Judge Corrigan entered an Order granting

Defendant's initial Motion to Dismiss Plaintiff Jo-Ann Marchelle Brooks'

(Plaintiff) initial Complaint. (*See* Order, Dkt. 11). Judge Corrigan

determined that Plaintiff's initial Complaint was a "classic and impermissible

'shot gun' complaint, failing to comply with Rules 8 and 10, Federal Rules of Civil Procedure, as well as with the legal standards to be met in order to survive a motion to dismiss." (Dkt. 11, Pg. 5). In analyzing Plaintiff's EEOC charge, the Court noted that "the discrete acts of alleged discrimination by her employer must have occurred on or after August 22, 2007." (Dkt. 11 p. 11).

Plaintiff filed an Amended Complaint (Dkt. 12) consisting of nine Counts. Defendant subsequently filed its Motion to Dismiss Plaintiff's Amended Complaint. (Dkt. 13). This Court entered an Order granting Defendant's Motion to Dismiss Plaintiff's Amended Complaint. The Court determined that Plaintiff's Amended Complaint still suffered from pleading deficiencies and did not comply with the *Iqbal/Twombly* pleading requirements. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Atlantic Corp. v. Twombly*, 550 U.S. 554, 563 (2007).

## II.    BACKGROUND

Plaintiff was first hired by CSXT on May 19, 1977. (Brooks Dep. Dkt. 66-2 p. 16).[1] From 1991 through 1992, she worked in various departments

---

[1] Plaintiff's Second Amended Complaint includes an uncorrected scrivener's error that provides an incorrect hire date of 1987. *See* (Dkt. 44 ¶ 12).

as a Union employee, including serving as a Senior Pricing Analyst, Account Statistical Clerk, Claims Investigator, Account Clerk and a Clerk Typist. (Dkt. 44 p. 3-4). In 1992, Plaintiff relocated to Jacksonville, Florida where she worked as a "Pricing Analyst, Clerk Typist, and Statistical Clerk" in the Pricing Services Department. (*Id.* at 4). From 1992 to 1996 Plaintiff worked as a Pricing Analyst, Clerk Typist and Statistical Clerk for CSXT. She continued her employment with CSXT working in different capacities through 2003. In 2003, she joined the Human Resources Department as a Manpower Representative. (*Id.*). Plaintiff earned a college degree and a masters degree in business administration from Phoenix University in 2002 and 2006 respectively. (*Id.* at *4-5*). Plaintiff is a 53 year old African American woman.

Plaintiff alleges that starting in 2006, she applied for promotion a number of times for various positions that she was qualified for but was never promoted. (*Id.* at 5). Specifically, she states CSXT hired employees that were either "less qualified," had "less tenure," "less educated" and were either younger or Caucasian. (*Id.* at 5-8). She lists the positions she applied for and did not receive as: Human Resources Management Trainee position (March 10, 2006); Logistics Coordinator (October 12, 2006);

3

Staffing Specialist (December 7, 2006); Staffing Specialist (January 26, 2007); Supervisor of Environmental Contracts (February 27, 2007); and Manager-PACS Administration (July 16, 2007). (*Id.*).

Plaintiff alleges she injured her back on August 15, 2007 while lifting a box of files at work (*Id.* at 9). On August 20, 2007, Brooks "was escorted off Defendant's property and suspended for sixty-seven (67) days without pay." (*Id.*). She returned to work on October 8, 2007, "and continued to perform her duties as best she could in light of the back injury a few months earlier." (*Id.*). On January 16, 2008, Stephanie Howard, Manager of PACS-Administration, informed Plaintiff that she was suspended again until further notice. (*Id.* at 10). On January 17, 2007, Plaintiff received a "charge letter" stating the nature of the charges. (Brooks Dep. Dkt. 66-1 p. 102). On February 8, 2008, Plaintiff appeared at a disciplinary hearing. On February 20, 2008, Defendant CSXT terminated Plaintiff.

Plaintiff alleges she has satisfied all procedural and administrative requirements prior to filing suit including: filing a timely charge of discrimination with the appropriate state fair employment practices agency; filing a timely written charge of discrimination with the Unites States Equal Employment Opportunity Commission; Plaintiff has received a Notice of

4

Right to Sue from the EEOC; and, Plaintiff filed the Original Complaint in this action within ninety (90) days from the receipt of the Notice of Right to Sue letter from the EEOC. (Dkt. 44 p. 3).

Plaintiff has filed a three-count Second Amended Complaint against CSXT Transportation, Inc. (Dkt. 44). Plaintiff's Second Amended Complaint alleges age and racial discrimination as the basis for "Denial of Promotions", "Retaliation," and "Disparate Treatment" under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, 42 U.S.C. §1981 and the Age Discrimination and Employment Act, 29 U.S.C. § 621 et seq.[2]

## III. STANDARD

Summary judgment will be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). Rule 56 "mandates the entry of summary judgment . . . against a

---

[2] Although Plaintiff's Second Amended Complaint does not definitively state which theory each count should be analyzed under, the Court has made every effort to reasonably construe the inferences from the underlying facts and pleadings. Consequently, an analysis will be provided for all applicable plead theories.

5

party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Chapman v. Am. Cyanamid Co.*, 861 F.2d 1515, 1518 (11th Cir. 1988)(citations omitted). The Court may grant summary judgment when the evidence favoring the non-moving party is merely colorable or is not significantly probative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

The movant bears the exacting burden of demonstrating that there is no dispute as to any material fact in the case. *Celotex Corp.*, 477 U.S. at 323; Hairston *v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993); *Warrior Tomigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). Once the moving party satisfies its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324; *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 524 (11th Cir. 1994).

The only determination for the court in a summary judgment proceeding is whether there exists genuine and material issues of fact to be

6

tried. *Id.* at 921; *Dominick v. Dixie Nat'l Life Ins. Co.*, 809 F.2d 1559 (11th Cir. 1987). All the evidence and the inferences from the underlying facts must be viewed in the light most favorable to the nonmovant. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

At the summary judgment stage, Plaintiff's bare allegations are insufficient to withstand a summary judgment ruling in Defendants' favor. *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980)[3] ("[W]e note that [Plaintiff's] 'Answer to defendants Motion for Summary Judgment' also fails to comply with Rule 56. It is an unsworn statement, which the court may not consider in determining the propriety of summary judgment.") (citations omitted); *Carmack v. Gibson*, 363 F.2d 862, 864 (5th Cir. 1966) ("[O]n motion for Summary Judgment, the Court with the evidential facts, not the bare allegations, can determine in advance of trial whether there is a genuine issue for ultimate decision of judge or jury.") (citations omitted).

---

[3]In *Bonner v. City of Prichard,* the Eleventh Circuit adopted as precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981. 661 F.2d 1206, 1207 (11th Cir. 1981).

**TITLE VII**

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (Title VII) makes it "an unlawful employment practice for an employer...to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals race, color, religion, sex, or national origin." 42 U.S.C. § 2000E-2(a)(1). "Plaintiff is initially required to establish a prima facie case of discrimination through one of three generally accepted methods: (1) statistical proof; (2) direct evidence of discriminatory intent; or (3) by meeting the burden-shifting scheme set for in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)." *Crosdale v. Indian River Mem. Hosp.*, 299 F.Supp. 2d 1247, 1249-50 (S.D. Fla. 2003).

**Age and Discrimination in Employment ACT (ADEA)**

The Age and Discrimination in Employment Act ("ADEA") forbids age discrimination in the employment of persons at least forty years of age but less than seventy years of age. 29 U.S.C. § 621 et seq. A Plaintiff's ADEA claims are analyzed under title VII standards. *Harper v. Blockbuster Entertainment Corp.,* 139 F.3d 1385, 1387 (11th Cir. 1998).

*42 U.S.C. § 1981*

42 U.S.C. § 1981 gives "[a]ll persons ... the same right ... to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The legal elements of Title VII claims and Section 1981 claims are identical. *Mathis v.* Wachovia, 509 F.Supp. 2d 1125, 1132 (N.D. Fla. 2007). Section 1981 claims are analyzed under the same standards as Title VII claims. *Id.* Consequently, Title VII and Section 1981 claims can be discussed concurrently. *Godoy v. Habersham County*, 211 Fed. App'x. 850, 852 (11th Cir. 2006)(holding that claims under Title VII and § 1983 against state actors for violations of § 1981 can be discussed concurrently).

## IV. DISCUSSION[4]

## COUNT I DENIAL OF PROMOTIONS

### Title VII and Age Discrimination

Defendant argues that all of Plaintiff's claims for failure to promote under Title VII and the ADEA are untimely and should be dismissed. Specifically, failure to promote constitutes a discrete act of discrimination and Plaintiff was required to file a complaint with the EEOC within 300 days

---

[4] To streamline this Order, most internal citations will be omitted and many non-dispositive arguments will not be discussed.

of each occurrence (Dkt. 66 p. 15). Defendant further argues that the continuing violation theory does not apply to discrete acts of discrimination (Id.). Plaintiff argues that Defendant's failure to allege the specific date Plaintiff was notified that she did not receive the promotion is fatal to Defendant's argument as that date constitutes the date of the discrete act of failure to promote.

"The starting point of ascertaining the permissible scope of a judicial complaint alleging employment discrimination is the administrative charge and investigation." Alexander v. Fulton County, Ga., 207 F.3d 1303, 1332 (11th Cir. 2000), overruled on other grounds by Manders v. Lee, 338 f.3d 1304 (11th Cir. 2003); 41 U.S.C. § 2000e-5. "No action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge." Alexander, 207 F.3d at 1332. "A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id. Determination of whether plaintiff exhausted her administrative remedies with the EEOC is a legal determination for the Court. Gregory v. Ga. Dep't of Human Resources, 355 F.3d 1277, 1280 (11th Cir. 2004).

"Strict adherence to Title VII's timely filing requirements is the best guarantee of evenhanded administration of the law." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). "In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice...." *Id.* at 109. "A discrete retaliatory or discriminatory act "occurred" on the day that it "happened." *Id.* at 110. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* Failure to promote, termination, denial of transfer and refusal to hire are "discrete acts," each constitutes a "separate actionable 'unlawful employment practice.'" *Id.* at 114. The continuing violations doctrine does not apply to discrete acts and only those acts occurring within 300 days prior to the filing of an EEOC charge are actionable. *Id.*

Here, the Court previously noted that Plaintiff's alleged claims under Title VII and the ADEA for failure to promote occurred more than 300 days prior to the filing of her EEOC claim. Specifically, Judge Corrigan

11

previously stated (Dkt. 11) that because Florida is a deferral state (with a state agency equivalent to the EEOC), Plaintiff Brooks was required to file a Charge of Discrimination within 300 days of the last discriminatory act alleged in order to timely exhaust her administrative remedies and bring a suit on the basis of that action. *Nat'l R.R. Passenger Corp.*, 536 U.S. 101 (2002); *see also EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002); *Sheilds v. Fort James Corp.*, 305 F.3d 1280 (11th Cir 2002). Judge Corrigan noted that the filing of Plaintiff' EEOC charge on June 17, 2008 requires that the discrete acts of discrimination occur on or after August 22, 2007.

However, all six (6) claims for failure to promote in Plaintiff's Second Amended Complaint occurred prior to August 22, 2007. Plaintiff's argument that the date Plaintiff is informed she did not receive a promotion constitutes the date of the discriminatory act is misplaced. In fact, the date of the alleged discriminatory act for failure to promote is the date the parties understand the employer has made its final decision as to the candidate selected for the position. *See Nat'l R.R. Passenger Corp.*, 536 U.S. 101, 111-12 (2002). In the most recent position alleged by Plaintiff, Defendant CSXT interviewed all candidates on or around July 10, 2007, determined

Stephanie Howard was the best candidate and Howard began her term as Manager of Manpower (PACS) Administration on July 16, 2007 (Dkt 66-57). As such, July 16, 2007 constitutes the date Plaintiff and Defendant both understood the finality of the promotion and thus the date of the alleged discriminatory act. Further, the selected candidates for the other positions alleged by Plaintiff also began their terms in those positions prior to August 22, 2007.

Although this Court has previously instructed Plaintiff that discrete acts of alleged discrimination by CSXT must have occurred on or after August 22, 2007 to form a basis for age or race discriminations under the ADEA and Title VII, Plaintiff's Second Amended Complaint does not contain any allegations that comply with this mandate.[5] Judge Corrigan previously noted that Plaintiff did not check the "continuing action" box on the EEOC form. (Dkt. 11 p. 1). The Court finds Plaintiff's Claims for failure to promote based on age and race discrimination in violation of the ADEA and Title VII that occurred prior to August 22, 2007, untimely. *Nat'l R.R. Passenger Corp.*, 536 U.S. 101 (2002) *see also EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002).

---

[5] Plaintiff's Second Amended Complaint alleges discrete acts of discrimination that are considered "untimely" and thus barred.

## 42 U.S.C. § 1981

As this Court previously noted, Section 1981 claims are analyzed under the same standards as Title VII claims.[6] *Mathis,* 509 F.Supp. 2d at 1132 (N.D. Fla. 2007). Consequently, Title VII and Section 1981 claims can be discussed concurrently. *Godoy v. Habersham County,* 211 Fed. Appx. 850, 852 (11th Cir. 2006)(holding that since claims under Title VII and a § 1983 cause against state actors for violations of § 1981 have the same elements of proof and analytical framework they can be discussed concurrently).

The United States Supreme Court has noted that unlike Title VII claims, § 1981 claims do not require those who invoke its remedial powers to satisfy certain procedural and administrative requirements. *CBOCS West, Inc. v. Humphries,* 553 U.S. 442, 454 (2008). Specifically, there is no requirement to exhaust administrative remedies or to file a charge with the EEOC within 300 days. *Id.*

The Eleventh Circuit has tailored the Title VII standard as follows: "In order ... to establish a prima facie case of discrimination for... failure to promote...[s]he must show that (1) [s]he is a member of a protected class;

---

[6] The analytical framework being identical, the Court's dismissal of Plaintiff's claims under the ADEA and Title VII will not prejudice Plaintiff.

(2) [s]he was qualified and applied for the promotion; (3) [s]he was rejected despite h[er] qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted." *Mathis v. Wachovia*, 509 F.Supp. 2d 1125, 1137 (N.D. Fla. 2007) citing *Jerome v. Marriott residence Inn Barcelo Crestline/AIG,* 2006 WL 3487152 (11th Cir. 2006).

The parties agree Plaintiff is a member of a protected class. The parties disagree about prongs two (2), three (3) and four (4). Plaintiff argues that she was qualified for the positions and that a lesser qualified non-black employee was promoted to each of these positions. CSXT claims that she was not qualified or the "most" qualified for any of the controverted positions and that no employees outside of the protected class with qualifications equal to or inferior to Plaintiff received the positions in question. Notably, in her deposition, Plaintiff was unable to provide the name of any employee at CSXT that has ever made biased comments to her against her race or age.[7] Throughout Plaintiff' deposition, she admits

---

[7] Brooks stated "I don't believe anybody from that company, from CSX would actually write or tell me that they were racially biased or in any way of my race or age..." (Brooks Dep. Dkt. 66-2 p. 56). Consequently, Brooks' deposition testimony conflicts with her assertion in her Second Amended

to possessing no information concerning the qualifications of the hired

applicants. Plaintiff ultimately states that her basis for her belief that she

was discriminated against[8] is because the candidates chosen "were

younger than me and Caucasian." (Brooks Dep. Dkt. 66-2 p. 52).

### Human Resources Management Trainee-14887

This position required the successful candidate to begin by attending

management trainee classes on July 16, 2006 (Dkt 66-45 p. 5). CSXT

argues that Plaintiff was not qualified for the job, there were 897 applicants

for the position and Plaintiff's supervisor, Mr. Pettit described her as being

"not focused" and was not the most qualified candidate for the position.

Plaintiff contends that she was qualified for the position but admitted that

she was informed that she was not considered because she had yet to

complete her Masters in Management degree (Brooks Dep. Dkt. 66-2 p.

45).

Here, the internal job description posting (Dkt. 66-45 p. 5) states that

CSXT sought someone with a bachelors degree in human resources,

---

Complaint (Dkt. 44) that she was told that CSX "was looking to hire
younger employees."
[8] In her deposition, Brooks was unable to provide any evidence to support
her belief that she was not selected for any position based upon her age or
race.

organizational development or related field, that a masters degree was preferred, and that the applicant should demonstrate a good understanding of human resource legislation, proven project execution, leadership, communication, process improvement skills.

Plaintiff' only experience in human resources was working as a department clerk and manpower representative, none of which are leadership positions. Additionally, Plaintiff's manager did not recommend her for the position and she had yet to complete her Masters degree. Consequently, it is clear that Plaintiff lacked the desired experience in human resource leadership. Plaintiff' argument that her thirty (30) years of tenure and education should qualify her for "at least a shot" at the positions she applied for is misplaced. Only experience applicable to the job applied for makes a candidate qualified for the position.

Moreover, CSXT has an obligation to hire the candidate it feels is "most qualified" for the position. Plaintiff admitted that the recruiter for this position, Ms. Rienker personally informed her that she could not be considered because she had not finished her masters at the time (Brooks Dep. Dkt. 66-2 p. 45). It is clear that Plaintiff did not fulfill the requirements for the Human resources Management Trainee position. The selected

17

candidate graduated with honors with a degree in Business Administration, International Business and Human Resource Management (Dkt 66-45 p. 2). Further, the selected candidate held multiple leadership positions while pursuing her degree and possessed experience in human resources with two (2) other companies. Additionally, Plaintiff has failed to prove that a less qualified applicant not within a protected class was promoted to the position. (Id.)

### Logistics Coordinator-16871

CSXT argues that Plaintiff was not qualified for the job, there were 185 applicants for the position and the candidate chosen was more qualified than Plaintiff. Specifically, the chosen candidate holds a degree in information systems, an MBA and has extensive experience as a logistics coordinator for a subsidiary of CSXT. Plaintiff argues that the chosen candidate was a Caucasian male, she had two letters of recommendations and she was not made aware of the candidate's selection for months.

This position was posted in October of 2006. In answering Defendant's First Request for Admission, Plaintiff admits that she was informed that she was not selected for the Logistics Coordinator position prior to August, 22, 2007. (Dkt 66-60 p. 3). The selected candidate does

possess significantly greater qualifications than Plaintiff. In fact, the candidate chosen has extensive experience as a logistics coordinator for a subsidiary and has experience resolving railcar and hardware/software issues. See (Dkt. 66-39). Once again, Plaintiff has not proven a less qualified applicant not within a protected class was promoted to the position.

### Staffing Specialist-17172

CSXT argues that Plaintiff was not qualified for the job, one hundred and thirty-one (131) other candidates applied and the five (5) candidates chosen were more qualified than Plaintiff. CSXT contends that Plaintiff's interview score average of 1.8 was inferior to the scores of the candidates selected.[9] Plaintiff admits that she was informed that this position was filled and she was not selected prior to August 22, 2007(Dkt. 66-39 p. 3).

The qualifications for staffing specialist include: the ability to work with minimum supervision, a working knowledge of PeopleSoft eRecruit, the ability to answer applicant inquiries regarding online applications and good PC skills. (Dkt. 66-51 p. 4). Plaintiff, along with twenty (20) other candidates was interviewed for the five (5) available positions. The

---

[9] The five (5) candidates selected had scores ranging from 2.6 to 3.0 and three (3) of the candidates selected were African American.

19

candidates were asked several questions and were scored higher for specific as opposed to theoretical answers. (Dkt. 66-52 p. 5).

Plaintiff was interviewed on November, 11, 2006 (Dkt. 66-52 p. 4). Plaintiff received an average score of 1.8 on her first interview (Dkt. 66-51, p. 2); (Dkt. 66-52 p. 4). As only the most qualified candidates were granted a subsequent interview, Plaintiff and twelve (12) other candidates that received low scores in their first interview were not selected to proceed further in the interview process. (Id.). In this instance, Plaintiff admitted that she did not believe she was denied the promotion because of her race in her deposition (Brooks Dep. Dkt. 66-2 p. 59-60). Importantly, three (3) of the five (5) candidates chosen were African American females. (Id.). Brooks has not established that a less qualified applicant not within a protected class was promoted to the position.

### Staffing Specialist-17541

Plaintiff applied for this position sometime in December, 2006 (Brooks Dep. Dkt. 66-2 p. 62-63). CSXT argues that Plaintiff was not qualified for the job, one hundred and one (101) candidates applied and the candidate chosen was more qualified than Plaintiff. The chosen candidate had

20

eleven (11) years of experience in staffing, including management experience.

Plaintiff admits that she did not possess even one year of recruiting or recruiting support experience (Brooks Dep. Dkt. 66-2 p. 64). Moreover, Plaintiff admits that she had not worked with e-recruit beyond watching it being set up and possessed no experience with the HR applicant tracking system as required in the position description. (Brooks Dep. Dkt. 66-2 p. 65-66). Plaintiff also admits that she was informed that this position was filled and she was not selected prior to August 22, 2007(Dkt. 66-39, p. 3).

The selected candidate possessed several years of management experience, including experience as a staffing supervisor, manager of temporary services, and manager of employee relations. (Dkt. 66-47). Additionally, just one month prior, Plaintiff received a low score and was found to "almost meet" requirements when she interviewed for a previous staffing specialist position. (Dkt. 66-52 p. 4). Plaintiff has not established that a less qualified applicant not within a protected class was promoted to the position.

*Supervisor of Environmental Contracts-18069*

21

CSXT argues that Plaintiff received a phone interview and upon consideration, was found not qualified for the job. Plaintiff received an overall rating of "almost meets CSXT requirements" and was not selected to proceed further in the interview process. CSXT contends that the selected candidate met all of CSXT's requirements and possessed experience working with their legal department as well as contractors, city and state officials. Plaintiff argues that she did not receive an interview subsequent to the initial phone interview. Plaintiff also argues that the affidavit of Mr. Carl Gerhardstein, a member of the interview panel for this position cannot be considered by the Court because he has no personal knowledge of her interviewing process as he did not participate in her phone interview. Carl Gerhardstein is the Assistant Vice President of Environmental Systems for CSXT. In his capacity, Mr. Gerhardstein participated on the interviewing panel subsequent to the phone interviews and had full access to all of the notes and documentation created by the phone interviewer in relation to Plaintiff's phone interview. Plaintiff admits that she was informed that this position was filled and she was not selected prior to August 22, 2007(Dkt. 66-39, p. 3).

Plaintiff applied for this position on February 27, 2007. (Dkt. 66-60 p. 3). The position required a variety of technical skills and the ability to work closely with internal and external customers of CSXT. The position also preferred experience with the railroad accident reporting system (RAR), Oracle and Business Objects. Plaintiff had no recent experience utilizing Oracle, a key database and the railroad accident reporting system. (Brooks Dep. Dkt. 66-2 p. 68-69). Plaintiff received a rating of "almost meets requirements" from the interviewer, Ms. Peck. (Dkt. 66-49). The candidate ultimately selected received a rating "meets expectations," possessed extensive experience as a projects engineer assistant, was responsible for generating reports using Oracle in her current job and was already working closely with CSXTT's legal department, and city and state officials. (Dkt. 66-49); (Dkt. 66-50). Additionally, Mr. Gerhardstein's declaration can be considered by the Court. Plaintiff has not established that a less qualified applicant not within a protected class was promoted to the position.

### Manager Manpower (PACS) Administration-19079

CSXT argues that all candidates interviewed were asked the same seven (7) interview questions and were scored accordingly. CSXT argues

that Plaintiff did not meet the requirements for several questions posed by interviewing panel and lacked the technical skills desired. Further, the candidate selected already held the title of senior manpower support representative and supervised two (2) support clerks. Moreover the selected candidate held a degree in computer programming.

Plaintiff argues that the candidate hired had less education and experience. Additionally, she argues that the candidate hired was younger and Caucasian. Plaintiff also admits that she was informed that this position was filled and she was not selected prior to August 22, 2007(Dkt. 66-39, p. 3).

The qualifications for this position include: working knowledge of CSXT labor agreements, extensive knowledge of position & attendance control systems, PC programs including project management software, proven history of successfully managing projects from beginning to end and exceptional analytical and leadership skills. (Dkt. 66-48 p. 4). Consequently, the candidates were subjected to a rigorous interview that included testing their technical skills. Upon careful review of the evidence, it is clear that Plaintiff did not meet the requirements for the PACS Management position. The panel found that she only met the requirements

24

for question one (1) while the successful candidate either met or exceeded

the requirements for all questions posed. Specifically, upon logging into

the PACS system, Plaintiff was only able to perform one (1) of the five (5)

functions required. Moreover, she met the requirements for question one

(1), almost met the requirements for questions two (2), six (6), and seven

(7), and did not meet the requirements of questions four (4) and Five (5).

Ultimately, even if Plaintiff was qualified for any of the above

mentioned positions, she has not provided enough evidence for a

reasonable jury to conclude that the chosen candidates were equally or

less qualified than she.[10] *Chapman v. Am. Cyanamid Co.*, 861 F.2d 1515,

1518 (11th Cir. 1988). Plaintiff is required to produce more than "a mere

scintilla" of evidence showing that a jury could reasonably find for her.

*Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). Plaintiff certainly

had more tenure than the candidates chosen and in some cases, achieved

a higher degree. However, tenure at the company and a higher level of

education not relevant to the positions applied for do not provide a basis to

qualify someone for a position who is otherwise unqualified. Thus, Plaintiff

_____

[10] Consequently, even if Plaintiff's ADEA claims had survived, Plaintiff has
not proven that age was the basis for Defendant's actions and that the she
was equally or more qualified than any of the chosen candidates; therefore,
Plaintiff's ADEA claims would also fail.

has not met the requirements for a prima facie case in either of the situations in which she was denied a promotion. *Id.*

## Employer's Legitimate Nondiscriminatory Reasons

In showing that it had a legitimate, nondiscriminatory reason for its actions, the defendant's burden is "exceedingly light." *Perryman v. Johnson Prods. Co. Inc.*, 698 F.2d 1138, 1142 (11th Cir.1983) (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. at 254-55, 101 S.Ct. at 1094 (1981)). "The defendant only needs to produce evidence of a reason for its decision; it does not need to prove that it was actually motivated by that explanation." *Mathis v.* Wachovia, 509 F.Supp. 2d 1125, 1139 (N.D. Fla. 2007) (citation omitted).

Even if Plaintiff had established a *prima facie* case for her discrimination claims, CSXT has produced evidence that each of the selected candidates possessed qualifications specific to the position that exceeded Plaintiff's. *Perryman*, 698 F.2d 1138, 1142 (11th Cir.1983); *Mathis*, 509 F. Supp. 2d 1125, 1139 (N.D. Fla. 2007). Plaintiff has not refuted this evidence. CSXT has clearly satisfied its burden. *Mathis*, 509 F. Supp. 2d 1125, 1139 (N.D. Fla. 2007).

## Pretext

Once a defendant offers a legitimate, nondiscriminatory reason for its actions, the plaintiff must attack that reason "head on and rebut it' so as to show that the reason is really pretext for discrimination." *Mathis*, 509 F.Supp. 2d at 1139 (quoting *Chapman v. Al Transport*, 229 F.3d 1012, 1030 (11th Cir.2000)). Pretext can be established by evidence which "cast[s] sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'" *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir.1994). The proffered explanation is unworthy of belief if the plaintiff demonstrates "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder" could disbelieve it. *Combs v. Plantation Patterns, Meadowcraft, Inc.*, 106 F.3d 1519, 1538 (11th Cir.1997). Pretext may also be established by showing that the employer did not rely on the proffered explanations for its actions. *Chapman*, 229 F.3d at 1024.

Plaintiff admittedly has no evidence of the qualifications of the chosen candidates. Notably, Plaintiff admits that no one at CSXT has ever made any discriminatory comments to her concerning her age or race. Plaintiff

27

simply does not produce sufficient evidence to establish pretext on the part

of CSXT. *Cooper-Houston*, 37 F.3d 603, 605 (11th Cir.1994).

## COUNT II RETALIATION[11]

### *Title VII, 42 U.S.C. § 1981 and Age Discrimination*

Retaliation is a separate offense under Title VII, and the plaintiff need

not prove the underlying claim of discrimination for the retaliation claim to

be successful. *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 586 (11th Cir.

2000), *abrogated on other grounds by Burlington N. &Santa Fe Ry. Co. v.

White*, 548 U.S. 53 (2006); *Johnson v. Atlanta Independent School* System,

137 Fed. Appx. 311, 314 (11th Cir. 2005). To establish a *prima facie* case

of retaliation under Title VII, the plaintiff must show: (1) she participated in

an activity protected by Title VII; (2) she suffered an adverse employment

action; and (3) there is a causal connection between the participation in the

protected activity and the adverse employment action. *Gupta*, 212 F.3d at

587. "To establish a causal connection, a plaintiff must show that 'the

_____

[11] In her Response to Summary Judgment, Plaintiff discusses a U.S.
Department of Transportation report that claims CSX participated in
harassment, intimidation and retaliation against employees that reported
work related injuries. However, neither Plaintiff's Second Amended
Complaint nor EEOC charge includes reporting her injury as the basis for
retaliation. Therefore, this cannot serve as a basis for Plaintiff's Title VII
retaliation claims.

decision-makers were aware of the protected conduct' and 'that the protected activity and the adverse employment action were not wholly unrelated.'" *Id.* at 590 (internal citations omitted).

If the Plaintiff establishes a *prima facie case*, the Court must then examine whether the Defendant has stated at least one legitimate non-discriminatory reason for its adverse action. If the employer articulates one or more legitimate non-discriminatory reasons, the Plaintiff must then proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the employer's articulated reasons is pretextual. *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001). Plaintiff has the ultimate burden of proving each reason is a pretext for unlawful discrimination. *Id.*

As a threshold issue, the Court must first determine which activity Plaintiff relies on as a "protected" action.[12] Title VII protects an individual from retaliation "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a

---

[12] Although not legally obligated, the Court has taken the pleadings, depositions, affidavits, answers and admissions into consideration to establish Plaintiff's "protected activity."

29

charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

The activities that the Court finds meet the necessary criteria include: (1) Plaintiff's conversation with upper management where she stated she believed she was discriminated against for the position Ms. Howard was ultimately hired for; (2) Plaintiff's brief conversation with CSXT CEO, Mr. Ward sometime in 2007 (Dkt. 78-4 p. 2-3) regarding possible discrimination in passing her over for promotion; and (3) Plaintiff's request for an investigation upon not being selected for several positions. Plaintiff's discrimination complaint filed with Defendant's ethics hotline occurred on February 20, 2008, the same date Plaintiff received her termination letter via DHL overnight mail (Dkt. 78-5 p. 2). Moreover, Plaintiff did not file her EEOC complaint until June 17, 2008.

The parties do not dispute that Plaintiff has suffered an adverse employment action. The parties disagree as to the existence of a causal relation between the protected activity and Plaintiff's termination. The causal link requirement under title VII is construed broadly; "a plaintiff merely has to prove that the protected activity and the negative

employment action are not completely unrelated." *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1278 (11th Cir 2008).

Plaintiff explicitly stated that Ms. Howard only received the job over her because she was younger and Caucasian. Plaintiff's protest of Ms. Howard's hiring and Ms. Howard's subsequent investigation into her work production which ultimately resulted in Plaintiff's termination, provides enough inference for the Court to find the two events may be related. *Id.*

Although the circumstances leading to the investigation of Plaintiff's work production is somewhat suspicious, the investigation allowed CSXT to proffer evidence of Plaintiff's violation of several policies. Importantly, Plaintiff admitted to receiving and understanding the policies. (Brooks Dep. Dkt. 66-1 p. 97-100). CSXT has met is burden. *Denney*, 247 F.3d 1172 (11th Cir. 2001).

The burden then shifted back to Plaintiff to prove, by a preponderance of the evidence, that CSXT's reasons were pretextual. *Id.* Plaintiff has not refuted Defendant's assertions of these legitimate nondiscriminatory business reasons for terminating the plaintiff and thus failed to proffer sufficient evidence to create a genuine issue of material

fact regarding whether each of the employer's articulated reasons is pretextual. *Id.*

## COUNT III DISPARATE TREATMENT

### *Title VII, 42 U.S.C. § 1981 and Age Discrimination*

"Disparate treatment claims require proof of discriminatory intent either through direct or circumstantial evidence." *E.E.O.C. v. Joe's Stone Crab*, 220 F.3d 1263, 1286 (11th Cir.2000). A *prima facie* claim of discrimination can be established three ways: 1) direct evidence; 2) circumstantial evidence; or 3) statistical proof. See *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir.1990). If the Plaintiff relies on circumstantial evidence, the Court must apply the three-tiered analysis set forth in *McDonnell Douglas* and refined in *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-56, 101 S.Ct. 1089, 1093-95, 67 L.Ed.2d 207 (1981). *Byrd v. Lakeshore Hosp.*, 30 F.3d 1380, 1383 (11th Cir.1994).

The Eleventh Circuit has tailored the standard for Title VII disciplinary action claims as follows: in addition to being a member of a protected class, Plaintiff must show she "has engaged-either (a) disputedly or (b) admittedly-in misconduct similar to persons outside the protected class; and that similarly situated, nonminority employees (that is, persons outside

32

the protected class) received more favorable treatment." *Jones v.*

*Bessemer Carraway Medical Ctr.*, 137 F.3d 1306, 1311 (11th Cir.1998),

*superseded in part on denial of rehearing on other grounds by Jones v.*

*Bessemer*, 151 F.3d 1321 (11th Cir. 2007).

## Direct and Circumstantial Evidence

Direct evidence of discrimination is "evidence, which if believed,

proves [the] existence of [a] fact in issue without inference or presumption."

*Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir.1987). "'Only the

most blatant remarks, whose intent could be nothing other than to

discriminate ...' will constitute direct evidence of discrimination." *Damon v.*

*Fleming Supermarkets, Inc.*, 196 F.3d 1354, 1359 (11th Cir.1999) (citation

omitted). There are no allegations that could be construed as direct

evidence of intent to discriminate by CSXT.

The parties only dispute the existence of a person outside the

protected class that received more favorable treatment. *Jones*, 137 F.3d at

1311. To determine whether employees are similarly situated, the Court

must evaluate "whether the employees are involved in or accused of the

same or similar conduct and are disciplined in different ways." *Maniccia v.*

*Brown*, 171 F.3d 1364, 1368 (11th Cir.1999). When making that

determination, "[w]e require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Id.*

Plaintiff admits to being an independent contractor for Royalty Reigns Travel and being a travel agent working for Pro Travel Network. (Brooks Dep. Dkt. 66-2 p. 81). Plaintiff became a travel agent in March of 2006. (*Id.* at 124). Although she disputes the extent of her violations of company policy, Plaintiff admits to violating CSXT's policies pertaining to "solicitation," utilizing CSXT computers to store information, and utilizing CSXT property for personal financial gain.[13] CSXT charged Plaintiff with utilizing CSXT resources to operate a personal business during work hours. CSXT produced evidence of Plaintiff placing coworkers on hold to perform personal business. (*Id.* at 84-90). Plaintiff utilized CSXT resources and computers to send email solicitations for personal gain. (*Id.* at 95-100).

---

[13] Plaintiff admitted to receiving CSX policies that forbid sending email messages...in connection with solicitations or offers to buy or sell goods, use of the company resources that interfere with productivity or the productivity of coworkers and use of CSX computer resources for personal financial gain. (Brooks Dep. Dkt. 66-1 p. 97-100).

Plaintiff offers her own testimony *inter alia* the affidavit of Brenda Counts (Dkt. 74 p. 6) and the Declaration of CSXT Director of Employee Relations Linda Mundy (Dkt. 78-25) to prove that other employees were similarly situated and were treated favorably. Plaintiff specifically alleges: (1) Sue Clark, a white female employee, was not terminated for utilizing CSXT resources for personal business; (2) Cindy Murphy, a white female employee, sold Avon at work and was not disciplined; (3) Penny Butler, a white female employee, sold jewelry at work without being subjected to discipline; (4) Natasha Zuraikat, a white female employee, sold cosmetics at work without being subjected to discipline; (5) Ed Pettit, Plaintiff's supervisor, advertised his wife's real estate business at work by posting her business card; and (6) other employees sold pampered chef and Tupperware at work without being subjected to discipline.

The only employee that Plaintiff has provided evidence that CSXT had knowledge of violating CSXT policy is Sue Clark. Linda Mundy's Declaration (Dkt. 78-25) provides that Sue Clark was reprimanded for using CSXT resources for personal business and "was not found to have falsified time records or to have been conducting personal business during working hours." (*Id.*). Ms. Mundy's Declaration denies that CSXT had any

35

knowledge that employees Cindy Murphy, Penny Butler, Natasha Zuraikat and Ed Pettit utilized company resources for a personal business or ran a personal business during working hours. Brenda Counts only alleges that she knew that several employees sold cosmetics, pampered chef and other items. Ms. Counts does not allege that CSXT was aware of these allegations and failed to act. Additionally, none of the proffered evidence alleges that CSXT had knowledge of any other employee that failed to perform their assignments, delayed CSXT customer's while conducting personal business, falsified payroll records, interfered with productivity or utilized CSXT resources for personal gain in a similar manner. Consequently, the quality and quantity of the alleged violations differ, and as a result, these employees were not similarly situated. *Mathis*, 509 F. Supp. 2d at 1136 (N.D. Fla. 2007). As a result, Plaintiff has failed to establish a *prima facie* case with respect to any of the disciplinary actions taken by CSXT. *Jones*, 137 F.3d 1306 (11th Cir.1998).

## V. CONCLUSION

The Court finds Plaintiff's claims for failure to promote based on age and race discrimination in violation of ADEA and Title VII untimely. Plaintiff has failed to demonstrate a genuine issue of material fact regarding any of

36

her claims and summary judgment is due to be granted in favor of Defendant as to each of the remaining claims in the Second Amended Complaint. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Accordingly, it is **ORDERED**:

1.    Defendant's Motion for Summary Judgment (Dkt. 66) is **GRANTED**;

2.    The clerk is directed to enter judgment in favor of Defendant **CSXT** and against Plaintiff **JO-ANN MARCHELL BROOKS** and close this case; all pending motions are **MOOT**.

**DONE AND ORDERED** this 2̲9̲ day of ̲M̲u̲c̲̲, 2013.

HENRY LEE ADAMS, JR.
United States District Judge

Copies to: Counsel of Record